United States District Court
Southern District of Texas
FILED

SEP 15 2020

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| UNTED STATES OF AMERICA § <br> § <br> v.  § <br> § <br> SYLVIA GARCES VALDEZ § <br> FRANCES SALINAS DE LEON <br> JOSE ADOLFO SALINAS <br>   also known as "Fito" <br> RAMIRO ALANIZ | CRIMINAL NO. M-19-1502-S3 |

## SEALED THIRD SUPERSEDING INDICTMENT

**THE GRAND JURY CHARGES:**

### COUNT ONE—FEDERAL PROGRAM FRAUD BRIBERY
*Public Relations Contract*

From at least June 4, 2018 and continuing through at least December 6, 2018, in the Southern District of Texas, the defendant,

### SYLVIA GARCES VALDEZ

did corruptly give, offer, or agree to give a thing of value to any person intending to influence and reward an agent of the City of La Joya, a local government that received benefits in excess of $10,000 pursuant to a Federal program involving a grant, contract, subsidy, loan guarantee, and other forms of Federal assistance in 2018, in connection with any business, transaction, or series of transactions of such state government and agency involving something of value of $5,000 or more: namely, **VALDEZ** gave, offered, and agreed to give U.S. currency in the amount of approximately $10,000 to Frances Salinas De Leon intending to influence and reward Jose Adolfo Salinas, the elected City of La Joya Mayor, for his influence in granting a public relations contract to the Defendant.

All in violation of Title 18, United States Code, Sections 666(a)(2) and 2.

## COUNT TWO—WIRE FRAUD
*Public Relations Contract*

From at least June 4, 2018 and continuing through at least December 6, 2018, in the Southern District of Texas, the defendants,

**SYLVIA GARCES VALDEZ
FRANCES SALINAS DE LEON
and
JOSE ADOLFO SALINAS
also known as "Fito"**

did intentionally and knowingly devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises in execution and for the purpose of executing said scheme and artifice transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce, any writings, signals, pictures or sounds, namely the following emails:

| DATE | WRITING | FROM | TO |
|---|---|---|---|
| June 8, 2018 | Email | francesanasalinas@gmail.com | chemgarces2187@icloud.com |
| June 8, 2018 | Email | francesanasalinas@gmail.com | salinasfito@aol.com |
| June 8, 2018 | Email | francesanasalinas@gmail.com | chemgarces2187@icloud.com |
| June 11, 2018 | Email | chemgarces2187@icloud.com | francesanasalinas@gmail.com |
| June 13, 2018 | Email | chemgarces2187@icloud.com | francesanasalinas@gmail.com |

In violation of Title 18, United States Code, Sections 1343, 1346, and 2

## COUNT THREE—WIRE FRAUD
*Cemetery Property Scheme*

From in or about January 2016, and continuing through at least July 20, 2016, in the Southern District of Texas, the defendant,

2

**JOSE ADOLFO SALINAS**
**also known as "Fito"**

did intentionally and knowingly devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises in execution and for the purpose of executing said scheme and artifice transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce, any writings, signals, pictures or sounds, namely the following emails:

| DATE | WRITING | FROM | TO |
|---|---|---|---|
| January 6, 2016 | Email | cityoflajoya@aol.com | salinasfito@aol.com marysalinas7@yahoo.com robertojackson43@gmail.com |
| February 9, 2016 | Email | robertojackson43@gmail.com | cityoflajoya@aol.com |

In violation of Title 18, United States Code, Sections 1343 and 2.

**COUNT FOUR—WIRE FRAUD**
*La Joya Housing Authority Scheme*

From in or about January 2017, and continuing through at least October 31, 2018, in the Southern District of Texas, the defendant,

**FRANCES SALINAS DE LEON**

did intentionally and knowingly devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises in execution and for the purpose of executing said scheme and artifice transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce, any writings, signals, pictures or sounds, namely the following emails:

| **DATE** | **WRITING** | **FROM** | **TO** |
|---|---|---|---|
| February 14, 2017 | Email | francesdeleon67@gmail.com | salinasfito@aol.com |
| June 1, 2017 | Email | lajoyahousingauthority@gmail.com | cityoflajoya@aol.com |
| June 2, 2017 | Email | lajoyahousingauthority@gmail.com | maricruzsifuentes4@gmail.com<br>jjpena2005@gmail.com<br>reyacosta0415@yahoo.com<br>salinasfito@aol.com<br>francesdeleon67@gmail.com |

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT FIVE—WIRE FRAUD CONSPIRACY
*Arcoiris Daycare Scheme*

At all times relevant to this count, with dates, times, and amounts being approximates:

### RELEVANT INDIVIDUALS AND ENTITIES

1. Defendant **JOSE ADOLFO SALINAS (SALINAS)** aka "Fito" was the City of La Joya Mayor and President of the La Joya Economic Development Corporation (La Joya EDC) from May 2011 to December 2019.

2. Defendant **FRANCES SALINAS DE LEON (DE LEON)** is the daughter of **SALINAS**.

3. Defendant **RAMIRO ALANIZ (ALANIZ)** was the Director of Maintenance at the La Joya Housing Authority from February 1, 2017, to November 2, 2018, while **DE LEON** was purporting to be the Interim Executive of the La Joya Housing Authority. **DE LEON** hired **ALANIZ** as the general contractor for the Arcoiris, LLC daycare project.

4. Person A and Person B owned Arcoiris, LLC, which is a children's daycare located in La Joya, Texas.

5. Person C is the owner of Company A located in Penitas, Texas.

6. Person D was the La Joya City Administrator from July 2000 through June 30, 2019, and also served as the La Joya EDC Secretary throughout his time as the City Administrator.

7. Person E was a member of the La Joya Housing Authority (LJHA) Board and a member of the La Joya EDC Board.

8. Subcontractor A was a subcontractor hired by **DE LEON** and **ALANIZ** to do work on the daycare.

## GENERAL ALLEGATIONS
### The La Joya Economic Development Corporation

9. The Texas Constitution, the laws of the State of Texas, and the charter of the City of La Joya established ethical standards of conduct for elected public officials, including the La Joya Mayor. These standards included an oath to faithfully execute the duties of the office of mayor and to preserve, protect, and defend the Constitution and the laws of the United States and the State of Texas. Accordingly, the Mayor owed a fiduciary duty to the City of La Joya, the commission, and the people of the City of La Joya.

10. As Mayor of La Joya, defendant **SALINAS** owed a fiduciary duty to the City of La Joya and to its citizens to perform the duties and responsibilities of his office free from corruption. As an elected official in the State of Texas, **SALINAS** swore to uphold the United States Constitution, the Texas Constitution, and the laws of the State of Texas and to faithfully execute the duties of his office.

11. The La Joya EDC has a revolving loan program. The purpose of the La Joya EDC is to foster economic growth to promote industrial, commercial and community development in the City of La Joya and surrounding areas. The La Joya EDC is financially supported in part by the United States Department of Agriculture's Revolving Loan Program.

5

12. The Mayor of La Joya serves as the Chairman of the La Joya EDC. The Chairman of the La Joya EDC appoints additional members to the La Joya EDC Board.

13. The La Joya EDC is authorized to take official action only when a quorum—a majority of the board members—is present. When a quorum is present, the board could act on a majority vote.

14. In or about 2015, Person A and Person B learned of the loan program being offered by the La Joya EDC.

15. In or about March 2016, Person A and Person B applied for and, the La Joya EDC approved, an initial loan ("Loan 1") in the amount of $217,000 for the Arcoiris daycare project.

16. On or about April 14, 2016, a loan agreement for Loan 1 was executed by **SALINAS**, as the Chairman of the La Joya EDC, and Person A loaning $217,000 to Arcoiris, LLC for the daycare project.

17. The checks listed in paragraphs 33, 35, and 37 were all checks issued by Compass Bank and were processed outside of the state of Texas and, therefore, affected interstate commerce.

## THE CONSPIRACY

18. From in or about November 2016, through in or about March 2018, in the Southern District of Texas and elsewhere, the defendants,

**JOSE SALINAS**
**also known as "Fito"**
**FRANCES SALINAS DE LEON**
**and**
**RAMIRO ALANIZ**

did knowingly combine, conspire, confederate, and agree together and with others known and unknown to the Grand Jury, to devise and intend to devise a scheme and artifice to defraud and to deprive, by means of material false and fraudulent pretenses, representations, and promises, and

to transmit and cause to be transmitted by means of wire communication in interstate commerce, any writings, signs, signals, pictures, and sounds for the purpose of executing the scheme and artifice to defraud in violation of 18 U.S.C. § 1343.

### THE SCHEME TO DEFRAUD

19. From in or about July 2017 through in or about March 2018, in the Southern District of Texas, and elsewhere, the defendants, **SALINAS, DE LEON**, and **ALANIZ**, and others known and unknown to the Grand Jury, devised and intended to devise a scheme and artifice to defraud the City of La Joya and the La Joya EDC.

### PURPOSE OF THE CONSPIRACY

20. The purpose of the conspiracy was for, but was not limited to, **SALINAS, DE LEON,** and **ALANIZ** enriching themselves and others.

### MANNER AND MEANS OF THE CONSPIRACY

21. The manner and means by which the defendants carried out the conspiracy included, but were not limited to the following:

22. In or about August 2017, **DE LEON,** on behalf of Person A and Person B, owners of Arcoiris, LLC, requested a loan ("Loan 2") from the La Joya EDC in the amount of approximately $241,662 to complete the construction of the Arcoiris daycare. **SALINAS** voted to approve the loan. The loan agreement, with Person A and Person B as guarantors, was purported to have been signed on or about August 10, 2017.

23. In or about December 2017, **DE LEON** on behalf of Person A and Person B, requested an additional loan ("Loan 3") from the La Joya EDC in the amount of approximately $99,500 for additional furniture and materials needed for the daycare. La Joya EDC Board members **SALINAS**, Person D, and Person E, were present and approved the additional loan.

24. **DE LEON** instructed **ALANIZ** to inflate billing invoices and **ALANIZ** instructed some subcontractors to inflate their invoices to hide that **DE LEON** was being paid kickbacks with money loaned to Arcoiris, LLC from the La Joya EDC.

25. From in or about 2017 through in or about 2018, **DE LEON** would write the subcontractors checks from the account containing the money awarded to Arcoiris, LLC. to build the daycare. In turn, **DE LEON** would give the check to **ALANIZ**, who would then give the check to the subcontractor. **ALANIZ** would then accompany the subcontractor to the bank to cash the check. Once the subcontractor cashed the check, **ALANIZ** would take the cash back from the subcontractor, and then return only a portion of the money from the check to the subcontractor.

26. Additionally, **DE LEON** embezzled U.S. currency from the Arcoiris, LLC bank account, BBVA Compass Bank Acct ******2447, via cash withdrawals and ATM withdrawals.

## OVERT ACTS

27. In furtherance of the conspiracy and in order to accomplish its objects, **SALINAS**, **DE LEON**, **ALANIZ** and their co-conspirators committed the following overt acts, among others, in the Southern District of Texas and elsewhere:

28. On or about November 11, 2016, **DE LEON** drafted or caused to be drafted a Letter of Authority giving **DE LEON** full authority over the daycare project, including its finances, which was signed by Person B.

29. From on or about January 20, 2017, to on or about July 28, 2017, **DE LEON** approved the payment of, and the the City of La Joya issued, approximately six checks from BBVA Compass Bank Acct. ****9301 totaling approximately $85,608.94.

30. On or about January 20, 2017, **DE LEON** delivered a letter to the City of La Joya requesting that **DE LEON** be paid $5,000 for her "Consulting and Management Assistance" in

conjunction with Arcoiris, LLC. **DE LEON** was paid by the City of La Joya from BBVA Compass Bank Acct. ****9301 with check no. 46653 on the same date.

31. On or about June 23, 2017, **DE LEON** informed the La Joya EDC that it would take approximately $75,000 to finish the construction of the daycare. **SALINAS**, as the La Joya EDC Chairman, voted to approve this additional loan.

32. On or about July 7, 2017, **DE LEON** submitted an invoice to Person A and Person B charging them $5,000 for **DE LEON's** work on the daycare. The invoice lists the following as services performed: consulting, project manager, accounts receivable/payable, and any and all matters pertaining to the building and operations of the new Arcoiris Daycare. On or about July 10, 2017, **DE LEON** was paid by the City of La Joya from BBVA Compass Bank Acct. ****9301 with check no. 46653.

33. On or about July 14, 2017, **DE LEON** caused the issuance of check no. 47838 by the City of La Joya from BBVA Compass Bank Acct. ****9301 to Person C, in the amount of $5,750 for testing electrical wiring, demolition on walls, and identifying electrical items that were missing or needed to be fixed at the daycare. This check was deposited by Person C on or about July 17, 2017.

34. On or about July 20, 2017, a new Loan Agreement for $75,000 was drafted but never executed.

35. On or about July 20, 2017, **DE LEON** caused the issuance of check no. 47847 by the City of La Joya from BBVA Compass Bank Acct. ****9301 to Company A, in the amount of $33,400 as the first half of Company A's estimate of $66,800 which included labor and materials for electrical work. This check was deposited by Person C on or about July 21, 2017.

36. On or about July 28, 2017, **DE LEON** and **ALANIZ** caused the issuance of check no. 47870 by the City of La Joya from BBVA Compass Bank Acct. ****9301 to **ALANIZ** in the amount of $11,670.74 for paint, equipment, and labor. **ALANIZ** deposited the check on or about the same date.

37. On or about July 28, 2017, **DE LEON** caused the issuance of check no. 47871 by the City of La Joya from BBVA Compass Bank Acct. ****9301 to Company A, in the amount of $15,588 for miscellaneous expenses related to electrical work and deposited by Person C on or about August 1, 2017.

38. On or about August 5, 2017, during a La Joya EDC meeting, **SALINAS**, as the La Joya EDC Chairman, and **DE LEON** both rejected the suggestion to have an independent contractor evaluate the financial requirements to finish the Arcoiris daycare project and the La Joya EDC approved Loan 2 in the amount of $241,652.

39. In or about August 2017, two loan agreements for Loan 2 were drafted and were purported to have been signed by **SALINAS** on or about August 10, 2017.

40. On or about August 10, 2017, **DE LEON** caused BBVA Compass Bank Acct ******2447 to be opened for Arcoiris, LLC. The bank agreement listed **DE LEON** as a signatory on the account.

41. On or about August 10, 2017, check no. 47922 was issued by the City of La Joya from BBVA Compass Bank Acct. ****9301 to Arcoiris, LLC in the amount of $100,000 as part of Loan 2, and was deposited or caused to be deposited in BBVA Compass Bank Acct ******2447 by **DE LEON** on or about the same date.

42. On or about August 22, 2017, check no. 47961 was issued by the City of La Joya BBVA Compass Bank Acct. ****9301 to Arcoiris, LLC in the amount of $56,053.06 as part of

Loan 2, and was deposited or caused to be deposited in BBVA Compass Bank Acct ******2447 by **DE LEON** on or about the same date.

43.     From on or about August 18, 2017, to on or about December 21, 2017, **ALANIZ** received and deposited four checks from Arcoiris, LLC, thousands of dollars of which were kicked back to **DE LEON** by **ALANIZ** to reward her for hiring **ALANIZ**.

44.     In or about August 2017, Subcontractor A was contacted by **ALANIZ** and was asked by **ALANIZ** if he wanted to work on the project and to submit a proposal. Subsequently, Subcontractor A submitted a proposal for $33,500 to complete "concrete work" for the Arcoiris daycare project.

45.     On or about August 11, 2017, **DE LEON** issued check no. 902 from BBVA Compass Bank Acct ******2447 to Subcontractor A in the amount of $33,500. Of that check, **ALANIZ** paid Subcontractor A approximately $23,000, and **ALANIZ** kept the remaining $10,000.

46.     On or about December 8, 2017, **DE LEON** requested additional money from the La Joya EDC for the Arcoiris daycare project. **SALINAS**, as the La Joya EDC Chairman, approved another subsequent loan to Arcoiris, LLC in the amount of $88,100.

47.     On or about December 12, 2017, **DE LEON** presented an itemized list of items that needed to be purchased and jobs that needed to be completed to the La Joya EDC. The itemized list included, in part: refrigerator, washer, dryer, ice maker, stove, playground equipment, toilets, water fountains, furniture, and computers and equipment. **DE LEON** requested Loan 3 in the amount of $99,500 in order to purchase the items on the itemized list. **SALINAS**, as the La Joya EDC Chairman, approved this additional amount.

48. On or about December 15, 2017, $99,500 (Loan 3) was deposited or caused to be deposited by **DE LEON** in in BBVA Compass Bank Acct ******2447 on or about the same date.

49. Beginning on or about December 18, 2017, **DE LEON** removed cash from Arcoiris's bank account through cash withdrawals and ATM withdrawals:

   a. On or about December 18, 2017, **DE LEON** withdrew $7,000 cash.

   b. On or about December 21, 2017, **DE LEON** withdrew $2,000 cash.

   c. On or about December 26, 2017, **DE LEON** withdrew $5,000 cash.

   d. On or about January 2, 2018, **DE LEON** withdrew $3,000 cash.

   e. On or about January 20, 2018, **DE LEON** withdrew $10,000 cash.

   f. On or about January 24, 2018, **DE LEON** withdrew $7,000 cash.

   g. On or about February 2, 2018, **DE LEON** withdrew $1,500 cash.

   h. On or about February 12, 2018, **DE LEON** withdrew $500 cash via ATM.

   i. On or about February 15, 2018, **DE LEON** withdrew $500 cash via ATM.

   j. On or about February 16, 2018, **DE LEON** withdrew $2,000 cash.

All in violation of Title 18, United States Code, Section 1349.

## NOTICE OF CRIMINAL FORFEITURE
### 18 U.S.C. § 981(a)(1) and 28 U.S.C. § 2461(c)

Pursuant to Title 18, United States Code, Section 981(a)(1), and Title 28, United States Code, Section 2461(c), the United States gives notice to the defendants,

**SYLVIA GARCES VALDEZ**
**FRANCES SALINAS DE LEON**
**JOSE ADOLFO SALINAS**
also known as "Fito"
and
**RAMIRO ALANIZ**

that upon conviction for the offenses in this Indictment, all property, real or personal, which constitutes or is derived from proceeds traceable to such offense, is subject to forfeiture.

<u>Property Subject to Forfeiture</u>

The property subject to forfeiture as to Counts One and Two is approximately $22,000; the property subject to forfeiture as to Count Three is approximately $235,000; the property subject to forfeiture as to Count Four is at least $50,000; and the property subject to Count Five is at least $105,000. In the event that a condition listed in Title 21, United States Code, Section 853 exists, the United States will seek to forfeit any other property of the defendant in substitution up to the total value of the property subject to forfeiture. The United States may seek the imposition of a money judgment.

A TRUE BILL

_____
FOREPERSON

RYAN K. PATRICK
UNITED STATES ATTORNEY

_____
ASSISTANT UNITED STATES ATTORNEY

13